IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 06-328-02 |
| TONY SOTO | : | |

GOVERNMENT'S SENTENCING MEMORANDUM AND
MOTION FOR UPWARD DEPARTURE FROM THE GUIDELINE RANGE

Defendant Tony Soto used a hapless straw purchaser to buy three rifles and a shotgun for resale to drug dealers. Only the shotgun has been recovered. The three rifles continue to circulate in the black market for guns or are in the hands of criminals who could not have purchased them lawfully. The potential human and societal costs of these illegally circulating weapons are incalculable. Because Soto committed these offenses while a fugitive from two state criminal prosecutions, the government respectfully moves the Court to grant a one-category upward departure from the otherwise applicable criminal history category. The resulting guideline range, if the Court grants the government's motion, will be 33-41 months imprisonment. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the upper portion of the advisory guideline range of 33-41 months.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006).

The Third Circuit has explained that the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. See also United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006) (directing district courts to explain all guideline determinations and final sentences, stating, "There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment."); United States v. King, 454 F.3d 187, 196-97 (3d Cir. 2006) (district courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review."). Accordingly, in United States v. Grier, 475 F.3d 556, 571-72 (3d Cir. 2007) (en banc), the Court

held that the solitary statement, "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)," was insufficient to explain the district court's reasoning, and remanded for resentencing.

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a within-guideline sentence in this case [or other recommended outcome].

I.      BACKGROUND

The defendant Tony Soto was charged by indictment with four counts of aiding and abetting the making of false statements to a federal firearms licensee, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2. Following a trial presided over by this Court, the jury convicted the defendant on all counts. The Court has denied Soto's post-verdict motions in a thorough opinion. United States v. Soto, 2007 WL 773719 (E.D. Pa. Mar. 8, 2007).

II.     SENTENCING CALCULATION.

    A.     Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is 20 years imprisonment, 3 years supervised release, a $1,000,000 fine, and a $400 special assessment.

    B.     Sentencing Guidelines Calculation.

In imposing sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established in the Sentencing Guidelines. The Third Circuit has confirmed: "In consideration of the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a

defendant's particular circumstances." Cooper, 437 F.3d at 330. This Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. Id.; see also United States v. Grier, 475 F.3d 556 (3d Cir. 2007) (en banc) (preponderance standard applies to all guideline facts, even an offense level enhancement which requires proof of a separate, uncharged crime); United States v. Giaquinto, 441 F.3d 195, 196 (3d Cir. 2006) (determine relevant conduct by a preponderance of the evidence). In short, the guideline range should be calculated in the same manner as it was prior to Booker.

> [W]e emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before Booker, including formally ruling on the motions of both parties and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-Booker caselaw, which continues to have advisory force.

United States v. King, 454 F.3d 187, 196 (3d Cir. 2006).

The necessary calculation of the guideline range includes the determination whether there should be a departure, either upward or downward, pursuant to the Sentencing Guidelines. See, e.g., United States v. King, 454 F.3d 187, 194 (3d Cir. 2006) (holding that district court erred in not using "ratcheting" procedure to determine extent of upward departure). The issue of guideline departures is distinct from the Court's authority, recognized in Booker, to impose a final sentence which deviates from the guideline range (which the Third Circuit calls a "variance," see United States v. Vampire Nation, 451 F.3d 189, 195 n.2 (3d Cir. 2006)). While the final sentence is subject to appellate review for reasonableness, this Court's decision to deny a requested departure is not itself subject to review if the Court makes clear that its denial is

based not on a legal determination that the departure is unavailable but on the Court's exercise of its discretion.  Cooper, 437 F.3d at 332-33.

In this case, as stated in the presentence report (PSR) to which neither party made any objection, the correct guideline calculation is as follows: total offense level 16 (PSR ¶ 29), criminal history category III (PSR ¶ 35), sentencing guideline range for imprisonment 27-33 months (PSR ¶ 72).  The PSR notes the potential applicability of U.S.S.G. § 4A1.3(a), which permits an upward departure when the Court finds that a defendant's criminal history category substantially under- represents the defendant's criminal history or the likelihood of recidivism. PSR ¶ 84.[1]  The government respectfully moves the Court for a one-category departure pursuant to § 4A1.3(a).  If the Court grants the government's motion, the guideline range will become 33-41 months imprisonment.

### GOVERNMENT'S MOTION FOR UPWARD DEPARTURE FROM THE OTHERWISE APPLICABLE GUIDELINE RANGE

DEFENDANT'S CRIMINAL HISTORY CATEGORY SIGNIFICANTLY UNDER-REPRESENTS HIS CRIMINAL HISTORY, WARRANTING AN UPWARD DEPARTURE UNDER U.S.S.G. § 4A1.3.

The government respectfully moves the Court to depart upward one category from the defendant's Criminal History Category III to Criminal History Category IV, permitting the imposition of an appropriate sentence in light of the defendant's criminal record and the likelihood that he will commit more crimes.  The mechanical computation of the defendant's criminal history category, based solely on his juvenile adjudications, does not adequately reflect the likelihood that he will commit other crimes.  Although not taken into account in the

---

[1] This does not constitute a recommendation by the Probation Office that the Court grant such a departure.  PSR ¶ 83.

mechanical calculation of his criminal history category, the defendant was a fugitive from justice for firearms and other offenses when he arranged and paid for the illegal purchases of a shotgun and three rifles. The defendant's belief that he has impunity from the criminal laws that govern our society and from his obligation to comply with court-ordered requirements that he appear for trial establishes that he is more likely than the typical defendant in criminal history category III to commit additional crimes.

In relevant part, U.S.S.G. § 4A1.3(a)(1), (2)(D) (Standard for Upward Departures and Types of Information Forming the Basis for Upward Departure) provides as follows:

> If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.
>
> . . . The information [that may warrant an upward departure] may include . . .:
>
> * * *
>
> Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.

The government submits that the defendant's fugitive status from two serious criminal cases in state court when he committed the instant offenses establishes that criminal history category III substantially under-represents the likelihood that he will commit further crimes. The defendant was not deterred from the instant offenses by the pendency of serious state charges against him, including a firearms charge.

In calculating the extent of departure, the court must look to each succeeding level of criminal history for an appropriate "fit." <u>United States v. Cicirello</u> 301 F.3d 135, 145-46 (3d Cir. 2002); <u>United States v. Hickman</u>, 991 F.2d 1110, 1111 (3d Cir. 1993). Here, the

government seeks only a one-category upward departure, which yields, the government submits, a guideline range more reflective, than that mechanically calculated, of the likelihood that the defendant will not be deterred by a lesser sentence from future criminal conduct. The Court should, therefore, depart upward one category and assign the defendant to criminal history category IV. This would yield a guideline range for imprisonment of 33-41 months.

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A full review of all pertinent factors supports the conclusion that a within-guideline sentence is appropriate in this case.

III.     ANALYSIS.

   A     Importance of the Guideline Range.

The advisory guideline range carries considerable weight even after Booker. As the Third Circuit stated, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range . . . ." Cooper, 437 F.3d at 331. The Court later noted: "The farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be." United States v. King, 454 F.3d 187, 195 (3d Cir. 2006), quoting United States v. Jordan, 435 F.3d 693, 696-97 (7th Cir. 2006); United States v. Manzella, 475 F.3d 152, 161 (3d Cir. 2007).

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Rather, the final guideline range is the starting point for determining reasonableness for three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

First, the guidelines are much more comprehensive than any other Section 3553(a) factor. Each of the other 3553(a) factors addresses only a single facet of the many issues posed

by sentencing. "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)." United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, quoted in United States v. Peach, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005). In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors. See 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

Second, the guidelines are the product of years of nationwide experience and sustained study. In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing Commission canvassed prior sentencing practice, identifying aggravating and mitigating factors. 28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987). Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account. U.S.S.G. App. C. Indeed, the Booker Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." Booker, 543 U.S. at 263 (Breyer, J.).

The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct. United States v.

Wilson, 350 F. Supp. 2d 910, 914-25, reaffirmed on denial of reconsideration, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); Peach, 356 F. Supp. 2d at 1020-22.

Third, the correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which Booker placed so much emphasis: "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[2] Congress, the Court, and the guidelines all seek to minimize such disparity compared to "all other similar sentences imposed nationwide." United States v. White, 406 F.3d 827, 837 (7th Cir. 2005). The Sentencing Guidelines provide the comprehensive information and guidance about sentencing around the nation that is essential to accomplishing Congress' goal of uniform federal sentencing. "The only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases. The only standard currently available is the Sentencing Guidelines." Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute for the neutrality, coherence, and equality" that the guidelines provide). Thus, measuring reasonableness in relation to the guideline range serves "to minimize the wide disparity in sentencing across the country for similarly situated

---

[2] Every opinion in Booker acknowledged the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible. See, e.g., Booker, 543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 303-04 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

defendants that led to the enactment of the Guidelines in the first place." United States v. Paulus, 331 F. Supp. 2d 727, 733 (E.D. Wis. 2005).

Thus, the Third Circuit in Cooper stated that "'[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct." Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).[3]

Accordingly, while many appellate courts have reversed as unreasonable sentences imposed outside the applicable guideline ranges,[4] reversals of sentences imposed within the guideline range have been extraordinarily rare, and have occurred only where the appellate court found that the district court did not adequately explain the sentence. See, e.g.,

---

[3] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses. A panel of the Third Circuit correctly found "no merit in [the] argument that the District Court should have considered what [the defendant]'s sentence would have been had he been convicted of a similar state-law offense. Booker directs our reasonableness review to the factors set forth under federal law for federal criminal offenses. That a separate sovereign chooses to implement its criminal sentencing scheme in a different manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

Likewise, in imposing sentence, a district court need not focus on disparate sentences imposed on co-defendants in the same case, as opposed to sentences imposed nationwide on like offenders. United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006).

[4] See, e..g, United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006); United States v. Smith, 445 F.3d 1 (1st Cir. 2006); United States v. Davenport, 445 F.3d 366 (4th Cir. 2006); United States v. Hampton, 441 F.3d 284 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434-37 (4th Cir. 2006); United States v. Duhon, 440 F.3d 711 (5th Cir. 2006); United States v. Goody, 442 F.3d 1132 (8th Cir. 2006); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006); United States v. McVay, 447 F.3d 1348, 1357 (11th Cir. 2006).

United States v. Carty, 453 F.3d 1214, 1220-21 (9th Cir. 2006). Moreover, the Courts of Appeals have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.[5]

B. Application of the § 3553(a) Factors.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines. The other 3553(a) factors also point to this conclusion.

---

[5] "[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005). The Third Circuit cited this view with approval in King and Manzella. Accord United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

The Supreme Court has granted certiorari to further clarify the significance of the Sentencing Guidelines. In United States v. Claiborne, 439 F.3d 479 (8th Cir. 2006), cert. granted, 2006 WL 2187967 (U.S. Nov. 3, 2006), the key issue presented is whether, as stated in these cases, a sentence which constitutes a substantial variance from the guidelines must be justified by extraordinary circumstances. The pendency of this case need not concern the Court here, however, as the government asserts that a sentence within the guideline range is most appropriate in this case, and there is no persuasive basis for any variance. In a second case pending before the Supreme Court, United States v. Rita, 177 Fed. Appx. 357 (4th Cir. May 1, 2006) (per curiam; not precedential), cert. granted, 2006 WL 2307774 (U.S. Nov. 3, 2006), the significant question presented is whether it is consistent with Booker to accord a presumption of reasonableness to within-guidelines sentences. The resolution of that case also is not significant here. The Third Circuit, as opposed to the Fourth Circuit and others, has already made clear that no presumption of reasonableness applies to a guideline range. Cooper, 437 F.3d at 331-32. Thus, the government here does not advocate a guideline sentence based on any presumption, but rather based on the persuasive force of the guidelines and the other considerations of sentencing, as set forth above.

Soto committed serious offenses. He recruited a hapless woman, who had a previously unblemished record and is now a convicted felon for doing Soto's bidding, to buy guns for him for resale in the black market. He has expressed no remorse for the harm he did to this woman. Soto arranged and paid for her illegally to purchase a shotgun and three rifles admittedly for sale to drug dealers. The three rifles were sold in this manner and have not been recovered. Thus introduced into the black market for guns, these weapons have ended up in the hands of persons prohibited from possessing them and undoubtedly have and will be used to facilitate further crimes. The potential human and societal costs of these illegally circulating weapons are incalculable.[6] Soto's crimes fall squarely within, if not above, the class of cases to which the applicable guidelines are addressed. Thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a guideline sentence at the upper portion of the range.

Clearly, the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Furthermore, the recommended sentence of incarceration affords adequate deterrence to Soto and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. § 3553(a)(2).

---

[6] In the government's view these human and societal costs may not be taken adequately into account in the relatively lenient guideline ranges provided for defendants whose illegally acquired weapons would inevitably end up in the hands of criminals. The government does not consider this view an appropriate basis on which to seek an upward departure under the guidelines and accordingly has not moved for an upward departure on this ground. The Court might conclude for this and other reasons, however, that an upward variance is warranted in this case, although the government does not seek it. In any particular case, more than one sentence may be reasonable, and it falls within the Court's discretion to select one.

Given the prevalence of gun violence in this district, the need to deter others from similar crimes is especially important here. This is an appropriate consideration in choosing a reasonable sentence. As the courts of appeals have held both before and after Booker, deterrence under 3553(a) is not limited to deterrence of the particular defendant. See, e. g., United States v. Eura, 440 F.3d 625, 638 (4th Cir. 2006) (concurring opinion) (referring to the court's consideration of "the general deterrence factor, § 3553(a)(2)(B)"); United States v. Jordan, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); United States v. Glover, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-Booker and post-Booker, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks omitted)); see also United States v. Yeaman, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation"). This consideration of general deterrence does not compel a sentence above the guideline range, but it is a persuasive reason for imposing a sentence in the upper portion of the guideline range.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case. § 3553(a)(7); PSR ¶ 71.

The government can perceive no persuasive argument for leniency.[7] Soto's appeals for a sentence at the bottom of the guideline range do not take into account the upward departure the government advocates and, in any case, are not persuasive. Soto appeals first to the absence of prior incarceration. Memorandum at 1. A more persuasive argument from the past leniency he has experienced counsels in favor of a higher sentence than that Soto requests. Given that the instant offenses were committed while the defendant was on court supervision and a fugitive from justice, a lengthier not a lesser sentence seems to be required to achieve the goal of deterring Soto from future crimes.

Soto's appeal to his medical condition, asthma, is equally unavailing. Memorandum at 2. This condition predated his commission of the instant offenses. Asthma is not an infirmity or enfeeblement that interfered with Soto's commission of the crimes of which the jury convicted him. It is difficult, therefore, to see how his asthma could make a sentence at the bottom of the guideline range more reasonable than one at the top.[8]

---

[7] It is incumbent on the Court to address any defense argument in determining the final sentence. See Cooper, 437 F.3d at 329 (directing that "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it.").

[8] Prisoners with life-threatening medical conditions which require continuous treatment are routinely confined to federal prisons for lengthy sentences, when appropriate. See, e.g., United States v. Hernandez, 218 F.3d 272, 28081 (3d Cir. 2000) (affirming refusal to depart because defendant had AIDS; the district court reasoned that the defendant's AIDS had not prevented him from committing the offense at issue and that the Bureau of Prisons was capable of treating AIDS); United States v. Persico, 164 F.3d 796, 801, 806 (2d Cir. 1999) (while in custody of the Bureau of Prisons for five years defendant was given coronary triple bypass, malignant cancer was discovered in one of his kidneys, which was subsequently removed, and he suffered severe hypertension; these medical problems did not oblige the district court to grant defendant a "departure" from a bargained-for sentence of 14 years imprisonment); United States

Finally, Soto appeals to "a potential for rehabilitation." Memorandum at 3. Nothing about Soto's criminal conduct suggests that a relatively lenient sentence, within the guideline range, will make his rehabilitation more likely. It is widely held that acceptance of responsibility is a first step toward rehabilitation. When, as in Soto's case, an offender has not accepted responsibility, appropriate punishment is a principal way of teaching that acceptance and of aiding the offender in the self-examination which precedes the self-understanding necessary for rehabilitation. The government's sentencing positions are based on the assumption that Soto has the capacity for rehabilitation. The government submits that the sentence it seeks is a reasonable one, consistent with this goal of punishment.

---

v. Richiez, 162 F.3d 1158, 1998 WL 559706, *2 (4th Cir. 1998)(unpublished disposition) (affirming denial of departure motion based on defendant's kidney failure necessitating dialysis three times a week); Corrao v. United States, 152 F.3d 188 (2d Cir. 1998) (district court rejected downward departure motion by defendant who had two kidney transplants due to diabetes; issue not reviewed on appeal from denial of defendant's second or subsequent Section 2255 motion); United States v. Quinn, 95 F.3d 8 (8th Cir. 1996).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence in the upper portion of the guideline range of 33-41 months imprisonment sought by the government. For all of these reasons, the government respectfully recommends that the Court sentence the defendant within the guideline range defined above.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_____
ERIC B. HENSON
Assistant United States Attorney

CERTIFICATE OF SERVICE

      I hereby certify that the Government's Sentencing Memorandum and Motion for Upward Departure from the Guideline Range has been served electronically upon:

>Daniel I. Siegel, Esquire
>601 Walnut Street, Suite 1150-W
>Philadelphia, PA 19106-3304

      and, by hand-delivery, upon

>Angela H. Montague
>United States Probation Officer
>2400 Green Federal Building
>600 Arch Street
>Philadelphia, PA 19106
>600 Arch Street, Suite 2400
>Philadelphia, PA 19106-1679


_____
ERIC B. HENSON
Assistant United States Attorney

DATE: _____